UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20957-CIV-ALTONAGA/Goodman

RUBY SOSA,

    Plaintiff,
v.

CARNIVAL CORPORATION,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Carnival Corporation's Motion for Summary Judgment [ECF No. 61], filed November 6, 2018. On November 20, 2018, Plaintiff, Ruby Sosa, filed a Response to Defendant's Motion for Summary Judgment [ECF No. 69], accompanied by her Statement of Facts [ECF No. 68] (the "Pl.'s SOF"). Defendant filed a Reply [ECF No. 74] on November 27, 2018. The Court has carefully considered the parties' submissions, their exhibits, the record, and applicable law. For the following reasons, the Motion is denied.

### I.     BACKGROUND

On April 27, 2017, Plaintiff suffered injuries from a slip and fall on Defendant's vessel, the *Carnival Freedom*. (*See* Defendant's Statement of Undisputed Material Facts [ECF No. 61] (the "Def.'s SOF") ¶¶ 1–2). According to Plaintiff, she slipped and fell in a puddle of water on the tile floor of the buffet dining room, while surveying the buffet for food choices near dinnertime. (*See* Pl.'s SOF ¶ 3). Other passengers, while waiting in line at the buffet to get their food, observed a puddle of water on the floor. (*See id.* ¶¶ 28–30). Some of those witnesses informed Defendant's staff of the puddle by asking them to clean it up; other witnesses

overheard passengers inform Defendant's employees of the puddle of water on the floor. (*See id.* ¶¶ 31, 34). Two witnesses saw water dripping from the ceiling of the buffet area immediately before Plaintiff slipped and fell. (*See id.* ¶ 36). As Plaintiff rounded a corner to look at the side of the buffet, her feet slipped out from under her and she landed in the split position, tearing her left rotator cuff, hurting her back, and spraining her knee. (*See id.* ¶¶ 38, 42–46).

Based on the events leading up to her slip and fall, Plaintiff filed a Complaint [ECF No. 1] stating a single negligence claim (Count I). (*See id.* ¶¶ 14–26). Specifically, Plaintiff alleges Defendant failed to provide a reasonably safe flooring surface; maintain the floor in a reasonably safe condition; and warn Plaintiff of the unreasonably dangerous condition of the floor. (*See id.* ¶ 18). As a result of the incident, Plaintiff contends she suffered injuries to her right hamstring, lumbar spine, left shoulder, and right knee; and mental anguish, including post-traumatic stress disorder, anxiety, and depression. (*See id.* ¶ 24). Defendant now seeks summary judgment. (*See generally* Mot.; Reply).

## II. LEGAL STANDARDS

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). If there are any factual issues, summary judgment must be denied and the case proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)). Even when the parties "agree on the basic facts, but disagree about the inferences that should be drawn from these facts[,]" summary judgment "may be inappropriate." *Id.* (alteration added; citation omitted).

"Under maritime law, the owner of a ship in navigable waters owes passengers a 'duty of

reasonable care' under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015) (citations omitted). To prevail in a maritime negligence claim, a plaintiff must show: "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (citations omitted).

### III. ANALYSIS

Defendant asserts it is entitled to summary judgment because (1) it had no duty to warn Plaintiff as the alleged dangerous condition was or should have been open and obvious through Plaintiff's own senses; (2) there is no evidence that Defendant had notice of the alleged creating condition — the floor was unreasonably slippery —; and (3) there is no evidence establishing medical causation. (*See* Mot. 1–2). The Court addresses each argument in turn.

**A. Open and Obvious Danger**

First, Defendant argues it had no duty to warn Plaintiff of the slippery floor because the danger was open and obvious to Plaintiff. (*See id.* 11–13). "A cruise line does not need to warn passengers or make special arrangements for open-and-obvious risks . . . . In determining whether a risk is open and obvious, we focus on what an objectively reasonable person would observe and do not take into account the plaintiff's subjective perceptions." *Horne v. Carnival Corp.*, 741 F. App'x 607, 609 (11th Cir. 2018) (internal quotation marks and citations omitted; first alteration added, second alteration removed)).

Defendant asserts given (1) Plaintiff was "under the influence of alcohol at the time of the incident;" (2) Plaintiff was "not looking at the ground as she traversed the subject walkway;" (3) several other passengers "walked the same exact path without incident," including passengers

who testified Plaintiff "would have seen the puddle had she looked down;" and (4) testimony that nothing was obstructing Plaintiff's view, the slippery floor was "undisputedly open and obvious." (Mot. 12; *see also* Reply 11).

Plaintiff disagrees, contending a genuine dispute of material fact exists on whether the puddle was open and obvious to a reasonable person in the circumstances. (*See* Resp. 4–7). Plaintiff points to eyewitness testimony indicating (1) she would not have seen the puddle even had she been looking down at the floor because she came upon the puddle immediately after rounding a column placed near the middle of the buffet; (2) she was not standing in line, waiting on food, rather, she was walking around the buffet observing the food choices; (3) and the other passengers were standing still, waiting on their food, and thus unlike Plaintiff, were "unsurprisingly" looking around while they waited. (*Id.* 5).

The Court agrees with Plaintiff. There is ample evidence to support the inference that Plaintiff slipped and fell on an otherwise dry and safe surface and that she had not encountered a similar dangerous condition in her previous visits to the buffet area. (*See id.* 7). Therefore, a reasonable trier of fact could find the puddle was *not* open and obvious — that a passenger reasonably would not expect to find the puddle of water that caused Plaintiff's injuries. *See Thomas v. NCL (Bah.), Ltd.*, 203 F. Supp. 3d 1189, 1194 (S.D. Fla. 2016) (finding "disputed issues of material fact regarding whether a puddle . . . on a deck is an open and obvious danger." (alteration added)).

In any event, Defendant's argument the danger to Plaintiff was "open and obvious" is insufficient to warrant summary judgment. As the undersigned has previously noted, "[i]n similar cruise ship cases where ship operators argued the plaintiffs were barred from recovery because the dangers were open and obvious, courts have found summary judgment

inappropriate." *Geyer v. NCL (Bah.) Ltd.*, 204 F. Supp. 3d 1354, 1358 (S.D. Fla. 2016) (alteration added; citation omitted). Finally, even if the danger was open and obvious, "[t]he fact a complained-of danger is open and obvious is not a total bar to recovery." *Pucci v. Carnival Corp.*, 146 F. Supp. 3d 1281, 1289 (S.D. Fla. 2015) (alteration added (citing *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1309 (S.D. Fla. 2011)).

Summary judgment as to Defendant's duty to warn is denied.

### B. Actual Or Constructive Notice

Second, Defendant argues there is no evidence it had actual or constructive notice of the alleged risk-creating condition. (*See* Mot. 13–17; *see also* Reply 12–13). Specifically, Defendant insists Plaintiff cannot establish Defendant was on notice of the risk-creating condition which caused Plaintiff's incident where (1) Plaintiff has not established the existence of the alleged dangerous condition (the unreasonably slippery nature of the floor); and (2) there are no prior incidents that would have put Defendant on notice the floor was unreasonably slippery — in the three years prior to the incident, only eight slip and fall incidents occurred in the buffet area. (*See* Mot. 15).

"In the Eleventh Circuit, under federal maritime law, there must be a finding of actual or constructive notice of a dangerous condition before a cruise ship can be held liable for negligence." *Wieters v. Carnival Corp.*, No. 16-25284-Civ, 2018 WL 4682217, at *3 (S.D. Fla. Sept. 28, 2018) (citing *Pizzino v. NCL (Bah.) Ltd.*, 709 F. App'x 563, 565 (11th Cir. 2017) (other citations omitted)). "[C]onstructive notice can be established by showing that "the shipowner ought to have known of the peril to its passengers, the hazard having been present for a period of time so lengthy as to invite corrective measures." *Id.* (alteration added) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)).

The Court must again disagree with Plaintiff. As to actual notice, three witnesses alerted Defendant's staff about the water on the floor, including some who asked Defendant's staff to clean up the puddle before Plaintiff's fall. (*See* Resp. 7). This eyewitness testimony *alone* supports a reasonable jury finding Defendant was on actual notice of the dangerous condition.

As to constructive notice, two eyewitnesses testified they observed water dripping from the ceiling in the area of the puddle before Plaintiff slipped and fell. (*See id.* 9). One eyewitness was in the area for about 20 minutes before Plaintiff's fall and observed both the leaking ceiling and the puddle it created on the floor. (*See id.*). Therefore, there is sufficient evidence to support the inference Defendant had constructive notice for a long enough period of time to take corrective measures. *See Thomas*, 203 F. Supp. 3d at 1193 ("In premises liability cases, for example, a plaintiff may prove constructive notice if he shows that a dangerous condition existed on the floor for a sufficient length of time, which Florida courts have found to be 15-20 minutes." (citation omitted)).

Summary judgment as to Defendant's actual or constructive notice is denied.

**C. Causation**

Finally, Defendant moves for summary judgment as to causation, arguing that "[a]bsent support from any medical expert, the record is devoid of evidence to establish that these injuries are related to the subject incident." (Mot. 18 (alteration added)). Defendant clarifies it is *not* arguing no evidence as to causation exists to support Plaintiff's hamstring injury; rather, Defendant contends nothing in the record establishes medical causation related to Plaintiff's *other* alleged injuries "should its *Daubert* motion be granted." (Reply 14). Accordingly, *if* the Court grants Defendant's *Daubert* Motion [ECF No. 60], Plaintiff will be unable to establish medical causation related to these injuries and Defendant is entitled to summary judgment. (*See*

CASE NO. 18-20957-CIV-ALTONAGA/Goodman

Reply 15).

The Court denied Defendant's *Daubert* Motion to Strike [ECF No. 60] in a December 13, 2018 Order [ECF No. 93] after an extensive Hearing [ECF No. 92]. Because Defendant's final basis for summary judgment is predicated on a successful *Daubert* Motion, which has since been denied, record evidence *does* exist to support an inference as to causation of Plaintiff's injuries.[1]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [**ECF No. 61**] is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 17th day of December, 2018.

*[signature: Cecilia M. Altonaga]*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

[1] The Court has not yet resolved Defendant's Motion to Strike Plaintiff's Expert, Dr. Raymond Fulp [ECF No. 85]. Accordingly, the Court did not consider Dr. Fulp's expert testimony in resolving Defendant's Motion for Summary Judgment.