UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-20957-CIV-ALTONAGA/GOODMAN

RUBY SOSA,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER CONCERNING PLAINTIFF'S SPOLIATION SANCTIONS MOTION**

Defendant Carnival Corporation has filed a 16-page motion for reconsideration of a 50-page order entered on Plaintiff Ruby Sosa's spoliation sanctions motion. [ECF Nos. 38; 82; 106]. The underlying spoliation sanctions motion and the order on it concern Carnival's loss of a closed-circuit television ("CCTV") video that Sosa believes will show her slip on some water while aboard a Carnival cruise ship (and demonstrate other circumstances concerning the fall, such as notice of the water and other passengers pointing to it). Sosa, the passenger, filed a 19-page opposition response. [ECF No. 109].

Before entering the 50-page order at issue, the Undersigned held a two-hour hearing on the spoliation sanctions motion. [ECF No. 58]. Before that, the parties

submitted myriad memoranda and proposed questions to ask opposing counsel at the hearing. [ECF Nos. 38; 47; 49; 54; 55]. After the hearing but before the order was entered, the parties submitted additional memoranda. [ECF Nos. 65–66].

Factoring in the reconsideration motion and opposition response, it is safe to say that the spoliation motion has been amply briefed.

Before assessing the merits of the reconsideration motion, the Undersigned notes that the prior order has not yet resulted in any sanctions being imposed. Instead, the order merely provided Sosa with a choice: she can have all the evidence about the CCTV and its unavailability presented to the jury (including the claim by the security officer James Desouza about what he saw and did not see on the video) and argue to the jury that Carnival had the intent to deprive her of it, *or* she can prevent that security officer from testifying at trial about the contents of the CCTV footage (and his efforts to preserve it) and have the Court advise the jury that the video footage is no longer available. The order noted that Sosa might decide to forgo the first option because she might not want the jury to hear the officer's testimony, especially because she and her attorneys did not have a similar opportunity to review the CCTV footage. Sosa might also adopt the strategic view that selecting the first option might backfire on her (if, for example, the jury were to conclude that she was trying to make an ESI mountain out of a CCTV molehill to bolster an otherwise weak case).

The February 5, 2019 deadline by which Sosa has to advise the Court of her

choice has not yet expired.

Regardless of what alternative Sosa chooses, the point here is that no sanction has yet to be imposed.

In any event, the Undersigned has carefully and comprehensively reviewed the underlying sanctions motion and related memoranda, my 50-page order, and the reconsideration motion and the response to it. Following that expansive and in-depth review, the Undersigned *confirms* (without repeating the analysis) the following: (1) the discussion of Federal Rule of Civil Procedure 37(e); (2) the distinctions between Rule 37(e) and the inherent authority doctrine for spoliation sanctions governing evidence other than ESI; (3) the history underlying Rule 37(e) and its applicability in this Circuit to ESI spoliation matters; (4) the conclusion that the lost CCTV footage at issue here is, in fact, ESI; (5) the sanctions available when ESI is lost and the burdens associated with the required elements for a successful ESI spoliation claim; (6) the distinction between the definition of ESI and whether its loss in a specific case justifies sanctions; (7) the conclusion that the inherent authority doctrine cannot be used to evaluate Sosa's ESI spoliation sanctions motion; (8) the conclusion that Sosa has the burden to establish that the party accused of spoliation (i.e., Carnival) did not take reasonable steps to preserve the ESI; (9) the summary of the relevant facts; (10) the discussion and analysis of *Long v. Celebrity Cruises, Inc.*, No. 12-22807-CIV, 2013 WL 12092088 (S.D. Fla. July 31, 2013); and (11) the discussion of the distinction between an assessment of whether Carnival took

reasonable steps to preserve the CCTV footage from a determination of whether Carnival's loss of the video reflects a bad faith intent to deprive Sosa of the video.

The Undersigned, however, believes it appropriate to respond with some detail to Carnival's primary challenge: that my specific finding that Carnival did not take reasonable steps to preserve the CCTV footage is clearly erroneous or contrary to law. That ruling did *not* include a finding that Carnival acted in bad faith (or, to use the specific language from Federal Rule of Civil Procedure 37(e), "with the intent to deprive another party of the information's use in the litigation").

Because the record is hazy and incomplete, the Undersigned noted that the intent issue would be reserved for the jury -- as the Advisory Committee Notes to Rule 37 expressly discuss as an option. The Undersigned expressly did *not* determine that Sosa established that Carnival intended to deprive her of the CCTV footage. Nevertheless, Carnival's reconsideration motion suggests that the Undersigned had concluded, in some way, that Carnival intended to deprive Sosa of the video footage.

Specifically, after recognizing that the Undersigned "acknowledged that [I] could not 'comfortably decide on this incomplete record whether Carnival had the requisite intent to deprive Sosa of the ability to use the video in this lawsuit,'" Carnival then argued that "the Court did not have enough evidence in the record, because Sosa had failed to present such evidence that Carnival acted with 'intent to deprive.'" [ECF No. 106, pp. 11–12]. "Therefore," Carnival further argued, "it was error to conclude that

4

the prerequisites to potential remedies under Subsections (1) and (2) of Rule 37 had been met." [ECF No. 106, p. 12].

The prerequisites mentioned in the 50-page order are the basic, threshold requirements for *any* type of remedy under Rule 37(e) -- and none of them concern an intent to deprive. Instead, as outlined in the order, the prerequisites involve determining that the evidence lost is, in fact, ESI and then meeting four conditions:

> First, the ESI should have been preserved in the anticipation or conduct of the litigation. Second, the ESI is lost or destroyed. Third, the loss of the ESI is due to the party's failure to take reasonable steps to preserve the ESI. Last, the ESI cannot be restored or replaced through additional discovery.

[ECF No. 82, p. 23 (quoting *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2018 WL 4856767, at *2 (N.D. Fla. Oct. 5, 2018)].

Carnival misconstrues the 50-page order as also finding that Sosa established *another* prerequisite necessary for the harsher-type sanctions available under subsection (2): a "finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). The order did not make that finding. And, as noted above, the order expressly reserved that issue for the jury (if Sosa were to select that option).

Thus, the Undersigned rejects Carnival's reconsideration motion to the extent it argues that "[t]he Court erred [by somehow concluding that an intent to deprive had been established] in concluding that the 'basic prerequisites for potential remedies under subsections (1) and (2) have been met.'" [ECF No. 106, p. 11].

Carnival's reconsideration motion also challenges as clearly erroneous or contrary to law the order's conclusion that the *jury* should hear evidence and determine whether Carnival acted with an intent to deprive. In furtherance of that argument, Carnival's reconsideration motion represents that "comments to the rule notwithstanding, courts interpreting the rule have **overwhelmingly** required the court to make a finding of intent (as opposed to a jury) prior to consideration of any remedies available under Fed. R. Civ. Pr. 37(e)(2)." [ECF No. 106, p. 13 (emphasis added)]. The Undersigned does not find this argument and representation convincing for several reasons.

First, although Carnival cites cases in which the court, as opposed to a jury, made that determination, that does not mean that a court is **foreclosed** from having a jury decide the intent issue. The Advisory Committee Notes expressly explain that "a court [could] conclude that the intent finding should be made by **a jury**." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (emphasis added). The Undersigned determined that a jury should make that determination because the record is murky, the critical witness (Desouza) has not testified, some of the circumstances are odd and arguably suspicious, and the Undersigned is not convinced of Desouza's credibility.

Second, the cases cited by Carnival do not necessarily support the view that a jury should *not* decide the intent issue. Instead, they concern other issues, such as the timing of the decision. For example, in *Watkins v. New York City Transit Auth.*, No. 16

6

CIV. 4161 (LGS), 2018 WL 895624 (S.D.N.Y. Feb. 13, 2018),[1] the Court denied a sanctions motion concerning a party's failure to fully produce text messages and her decision to trade-in her cellular phone even though she was allegedly aware of her duty to preserve it -- but without prejudice and with **leave to renew it before trial.** Similarly, the Court in *Title Capital Mgmt., LLC v. Progress Residential, LLC*, No. 16-21882-CV, 2017 WL

---

[1] The Bluebook requires that Westlaw citations in unreported cases, such as *Watkins*, include the case docket number:

> **(a) Cases available on electronic media.**
> When a case is unreported but available on a widely used electronic database, it may be cited to that database. Provide the case name, **docket number**, database identifier, court name, and full date of the most recent major disposition of the case. **Cite to the case docket number exactly as it appears**. If the database contains codes or numbers that uniquely identify the case (as do LEXIS, Westlaw, and Bloomberg Law), these must be given. Screen or page numbers, if the database assigns them, should be preceded by an asterisk; paragraph numbers, if assigned, should be preceded by a paragraph symbol[.]

THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION R. 10.8.1(a), at 104 (Columbia Law Review Ass'n et al. eds., 20th ed. 2015).

Carnival did not provide a case docket number citation for *Watkins* or for any of the other unreported Westlaw citations it mentioned in its reconsideration motion. On the other hand, neither did Sosa.

The Undersigned does not view the Bluebook requirement of a parallel case docket number in a Westlaw citation in an unreported case to be a hyper-technical, nitpicky-type obligation. To the contrary, there may well be a need or desire to evaluate the docket sheet and record evidence from the unreported case -- and the case docket number makes it easier to track down the case on PACER. Moreover, when the corresponding case docket number is not included, then the Undersigned or the law clerk working with me must track down the number. Suffice it to say, the Undersigned prefers if counsel follow the proper Bluebook form and include a case number reference for a Westlaw citation for an unreported decision.

5953428, at *6 (S.D. Fla. Sept. 29, 2017) concluded that the intent issue was "a close call" and concluded that a decision "will be better made after completion of all discovery."

Third, Carnival does not cite any case, binding or otherwise, to support its view that the current version of Rule 37(e)(2) **mandates** that the judge, instead of a jury, decide the intent to deprive issue.

Fourth, several courts have opted for the procedure discussed in the Advisory Committee Notes and have entered orders establishing that the *jury* would decide the intent issue. *See Hunting Energy Servs., Inc. v. Kavadas*, No. 3:15-CV-228 JD, 2018 WL 4539818, at *10 (N.D. Ind. Sept. 20, 2018) (relying on the Advisory Committee Notes when holding that "[t]he Court also believes that it is appropriate for the jury, rather than the Court, to decide whether the destruction of this evidence was in bad faith"); *Gipson v. Mgmt. & Training Corp.*, No. 3:16-CV-624-DPJ-FKB, 2018 WL 736265, at *7 (S.D. Miss. Feb. 6, 2018) (announcing plan to consider jury determination of intent issue "assuming there is sufficient trial evidence supporting it"); *Cahill v. Dart*, No. 13-CV-361, 2016 WL 7034139, at *4 (N.D. Ill. Dec. 2, 2016) (relying on Advisory Committee Notes and holding that jury would decide intent issue concerning destroyed video of prisoner's time at lockup because "it is the approach the Court believes to be appropriate in this case"); *Epicor Software Corp. v. Alternative Tech. Sols., Inc.*, No. SACV1300448CJCJCGX, 2015 WL 12734011, at *1–2 (C.D. Cal. Dec. 17, 2015) (citing Advisory Committee Notes and holding that the intent issue "is an open question of

fact that is suitable for resolution by the jury"); *see also BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 1616725, at *12 (N.D. Ill. Apr. 4, 2018) (recommending that the Court have the jury determine the intent issue after noting that "a fully informed judgment will depend upon the jury's assessment of the evidence and the witnesses").

Fifth, Carnival's representation that courts "overwhelmingly" select a non-jury approach to determine whether the alleged spoliator acted with an intent to deprive is most likely incorrect and may arguably be an exaggeration or a misleading statement. As noted above, district courts in Illinois, Mississippi, and California have followed the let-the-jury-decide approach to resolving the intent issue.

The Undersigned therefore rejects the argument that assigning the jury with the task of determining the intent to deprive issue is clearly erroneous or contrary to law. And for similar reasons, the Undersigned rejects Carnival's argument that the order impermissibly "fashion[ed] a division of authority [between the Court and the jury] regarding evidentiary rulings." [ECF No. 106, p. 15]. That argument is not supported by citation to any case law (or any other authority, for that matter). The Undersigned views that argument (consisting solely of one paragraph at the end of a 15-page reconsideration motion) to be an unconvincing theory tacked on to the end of the motion.

Because the core of the reconsideration motion concerns the issue of whether

9

Carnival took reasonable steps to preserve the CCTV footage that it represented would be available in discovery but later turned out to be lost or missing or destroyed without explanation, the Undersigned will focus on that argument.

The Undersigned's 50-page order relied, at least in part, on *Long v. Celebrity Cruises, Inc.*, No. 12-22807-CIV, 2013 WL 12092088 (S.D. Fla. July 31, 2013), which I noted was decided before the December 2015 amendment to Rule 37(e) went into effect. [ECF No. 82, p. 40]. In *Long,* the Court held that the spoliation elements had been met for the missing CCTV footage from a cruise and that some of the requested sanctions were warranted. *Long*, 2013 WL 12092088, at *5–6. The law at that time, however, required a finding of bad faith, which is a significantly **higher** standard than a failure to take reasonable steps to preserve the CCTV video.

Indeed, under the current version of Rule 37(e), a party can fail to take reasonable steps to preserve ESI and not act with an intent to deprive. Phrased differently, unreasonable steps might be defined as merely negligent ones. *Leidig v. Buzzfeed, Inc.*, No. 16CIV542VMGWG, 2017 WL 6512353, at *10, *12 (S.D.N.Y. Dec. 19, 2017) (explaining that failure to take reasonable steps to preserve is one that the Court "equate[d] to roughly a negligence standard" and finding that "[w]hile there is insufficient evidence that plaintiffs acted with an intent to deprive Buzzfeed of the [lost] evidence, the plaintiffs' actions were certainly negligent").

Intent to deprive is not a prerequisite for obtaining relief under Rule 37(e)(1). The

Rule itself makes that distinction clear, and the case law recognizes the obvious difference. *See Yoe v. Crescent Sock Co.*, No. 1:15-CV-3-SKL, 2017 WL 5479932, at *8 (E.D. Tenn. Nov. 14, 2017) ("Significantly, subsection (e)(1) does not contain an 'intent' requirement; thus, a party need not act willfully, deliberately, intentionally, or with any objective or subjective bad faith."). Even the cases Carnival relies on recognize this point. *See, e.g., Konica Minolta Bus. Sols., U.S.A. Inc v. Lowery Corp.*, No. 15-CV-11254, 2016 WL 4537847, at *3 (E.D. Mich. Aug. 31, 2016) ("Significantly, subsection (e)(1) does not contain an 'intent' requirement; a party need not act willfully, deliberately, intentionally, or with any objective or subjective bad faith.").

Thus, although negligence is insufficient to permit a court to impose any of the harsher-type sanctions available under subsection (e)(2), such as a permissible or mandatory jury presumption that the lost ESI was unfavorable to the party, it is sufficient to demonstrate that a party failed to take reasonable steps to preserve the ESI. And, as unequivocally set forth in the rule itself, the mere existence of negligence is insufficient to allow even the milder-type sanctions available under subsection (e)(1). That's because the party seeking relief must also meet its burden of establishing the other prerequisites (i.e., duty to preserve the ESI, the ESI cannot be restored or replaced through additional discovery, and a finding of prejudice to a party from loss of the ESI).

Many of the factors the *Long* Court highlighted as demonstrating bad faith (a higher standard) apply here, as well:

> The record here compelling[ly] demonstrates the reckless manner in which the security officer treated his duty to preserve relevant evidence. He **tried** once to download the data but could not do so for some reason. Recognizing the problem, he delegated the task to another officer onboard. But then, for reasons that have never been fully explained, he simply let the matter drop. He **did not** confirm that the other officer was any more successful than he was. And having failed to confirm this basic fact, he did not take any further actions at the conclusion of the voyage to obtain the assistance of Defendant's technical personnel to download the video before it was overwritten. There was ample time to do so, yet it appears that other responsibilities took precedence. For a security officer tasked with investigating a possible claim *in anticipation of litigation* and preserving evidence for that claim to allow the evidence to be lost in this manner is **undeniably reckless**. It was not only negligent, as Defendant posits, because there was a special duty to preserve this evidence. Under any objective measure, the failure to do so indeed rises to the level of a reckless dereliction of duty.

*Long*, 2013 WL 12092088, at *7 (bold emphasis added).

If a cruise ship's loss of CCTV footage was deemed **reckless** in *Long* (and reckless enough to justify sanctions under a bad faith requirement), then Carnival's loss of the CCTV video here is certainly at least *negligen*t, which is sufficient to establish a failure to take reasonable steps. The issue of whether the harsh-type sanctions may be imposed requires an additional finding of intent to deprive, which, as outlined above, has not yet been determined (because a jury will make that assessment if Sosa were to select the alternative leading to that result).

Amended Rule 37(e) does not define the "reasonable steps" necessary to preserve ESI, nor does it explain what a party must show to meet its burden to establish that a party failed to take those reasonable steps. Nevertheless, the Advisory Committee

Notes provide some guidance on what this phrase means. The Notes enumerate several specific factors that courts should consider when determining whether the specific steps taken in a particular case were "reasonable."

The Notes say that "[t]he court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts; some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment. In other words, parties may, in effect, be graded on a curve that considers their relative resources and litigation experience.

In this case, Carnival is surely sophisticated about litigation and is familiar with preservation obligations. According to its website, which the Undersigned takes judicial notice of, Carnival has 29 cruise ships flying the Carnival flag,[2] with ships departing from 23 ports, with multiple destinations in the Caribbean, the Bahamas, Mexico, Alaska, Canada, New England, Hawaii, Bermuda, Europe, Cuba, Australia, and the Panama Canal.[3] In addition, Carnival has been named as a defendant in hundreds of lawsuits in this district over the past ten years. Moreover, Carnival has significant resources and acknowledges that it regularly receives discovery requests for CCTV

---

[2] CARNIVAL, https://www.carnival.com/cruise-search (last visited January 25, 2019).

[3] CARNIVAL, https://www.carnival.com/cruise-to.aspx (last visited January 24, 2019).

footage. As its corporate designee (Monica Petisco, a litigation representative) explained in the Rule 30(b)(6) deposition, she testifies for Carnival at trials and depositions **once or twice a week.** [ECF No. 38-1, p. 6].

Carnival is well-versed in litigation issues and spoliation motions. It does not urge a contrary view of its sophistication and experience.

The Notes further explain:

> information the party has preserved may be destroyed by events outside the party's control -- the computer room may be flooded, a "cloud" service may fail, a malign software attack may disrupt a storage system, and so on. Courts may, however, need to assess the extent to which a party knew of and protected against such risks.

Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment. This language, in effect, provides a *force majeure* clause allowing for relief in an act of God scenario.

But there is no record evidence that any *force majeure* situation occurred here. Although Carnival proffered those hypothetical theories, the record contains no evidence to support any of them. Instead, as noted in the initial order, Carnival has no idea how or why the CCTV footage is lost.

The mere fact that the Undersigned noted Carnival's lack of an explanation about the missing CCTV footage does not mean that the burden of proof on the reasonable steps to preserve the ESI issue was improperly shifted to Carnival. The CCTV footage was Carnival's, so only Carnival would know how and why the footage was missing. It was appropriate for Sosa to pursue her burden of establishing Carnival's failure to take

reasonable preservation steps by noting that Carnival itself has no explanation for the loss of the ESI footage. Carnival's complete lack of explanation was simply one of many factors that the Undersigned noted in its analysis. Indeed, it would have been unusual and puzzling if the Undersigned had *not* mentioned Carnival's ignorance about the reason for the CCTV footage's loss.

Moreover, the Notes also point out that "[a]nother factor in evaluating the reasonableness of preservation efforts is proportionality." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment. Carnival has not advanced the argument that producing the CCTV footage is not proportional to the needs of the case. Indeed, Desouza decided (for some reason) to review the CCTV footage in this case even though he could not recall who asked him to investigate and even though the incident was ultimately decided (by an unknown person) to be non-reportable.

The Undersigned's order did not merely rely on the absence of the videotape to support the conclusion that Sosa met her burden of showing Carnival's failure to take reasonable steps to preserve the CCTV video. The order also highlighted myriad circumstances that were atypical and arguably suspicious. For example, the order discussed (1) the contradictory representations made by Petisco during her deposition [ECF No. 82, pp. 9–10, 14 ("In other words, Carnival's suggestion that a flash drive could have been lost is fundamentally inconsistent with the explanation that the F drive is on the actual ship, in its computer (and not on a flash drive)")]; (2) the incident being

deemed "non-reportable," *id.* at 10; (3) Desouza's investigation halted halfway through and not completed, *id.;* (4) Carnival's timing of discovery responses and its disclosure of Desouza after he was sent to India, *id.* at 9; (5) the length of time it took Carnival to get medical assistance to Sosa after her fall, which was likely depicted on the CCTV footage, *id.* at 11–12; and (6) Carnival's 14-day retention policy, which Sosa contends was "clearly violated" when Carnival received notice of Sosa's claim on day 13, yet still failed to preserve the footage, *id.* at 12. The Undersigned also noted that there were "myriad odd circumstances surround[ing] Desouza's involvement in the non-reportable investigation and the lack of detail surrounding the decision to brand the incident non-reportable." *Id.* at 49.

To be sure, the order mentioned Sosa's failure to take up Carnival's belated offer to take Desouza's deposition by telephone. But the order did not explain that this happened *after* Carnival violated an earlier court order to produce Desouza for a deposition within two weeks and to either take reasonable steps to facilitate a web-type video deposition or to submit a written explanation if Carnival could not accomplish this. Carnival offered Desouza for a telephonic deposition after the expiration of the two-week, court-ordered deadline.

Given all the circumstances outlined in this order, the Undersigned confirms the prior determination that Carnival did not take reasonable steps to preserve the CCTV footage. *See O'Berry v. Turner*, No. 7:15-CV-00064-HL, 2016 WL 1700403, at *2 (M.D. Ga.

16

Apr. 27, 2016) (finding intent to deprive and holding that the jury would be instructed that it must presume that the lost ESI was unfavorable to defendants where defendants argued that ESI had merely been "inadvertently destroyed" when its loss control manager printed a copy of the ESI and tried to save it in a manila folder in his filing cabinet before its automatic deletion and had "**no explanation** as to why the at-issue manila folder is missing") (emphasis added); *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017) (noting unexplained loss of ESI as part of analysis supporting the conclusion that defendant acted with an intent to deprive).

## **Conclusion**

The Undersigned denies Carnival's motion for reconsideration. Sosa will soon advise the Court of her decision on which alternative she selected, which is the procedure established in the original order. Should Sosa decide to present the issue to the jury, then Carnival will be able to submit evidence designed to convince the jury that it had no intent to deprive Sosa of the CCTV footage. If some of that evidence happens to serve the dual purpose of demonstrating a lack of intent to deprive and simultaneously showing that Carnival took reasonable steps to preserve the CCTV footage it lost without explanation, then so be it. The Undersigned recognizes the practical reality that it would be extremely difficult for Carnival to admit evidence on the intent issue that did not also have a connection (direct or indirect) to the issue of whether it took reasonable steps to preserve the ESI in the first place. That common

sense perspective is one that Sosa might consider when deciding which alternative to choose.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Cecilia M. Altonaga
All counsel of record